

CAG   3/30/04   14:11
3:98-CV-02359   ABBOTT LABORATORIES V. SYNTRON BIORESEARCH
*519*
*RPLYOPPM.*

DAVID C. DOYLE (CA SBN 70690)
STEVEN E. COMER (CA SBN 154384)
PENG CHEN (CA SBN 205718)
COREY A. SALSBERG (CA SBN 216544)
MORRISON & FOERSTER LLP
3811 Valley Centre Drive, Suite 500
San Diego, California 92130-2332
Telephone: (858) 720-5100
Facsimile: (858) 720-5125

Attorneys for Defendant
SYNTRON BIORESEARCH, INC.

FILED
MAR 26 2004
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRON BIORESEARCH, INC., a California corporation,<br><br>Defendant. | Case No.   98-CV-2359 H (BLM)<br><br>**SYNTRON BIORESEARCH INC.'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL UNDER 28 U.S.C. § 1292(C)(2)**<br><br>Date:   April 5, 2004<br>Time:   10:30 a.m.<br>Courtroom 1<br>Judge:   Hon. Marilyn L. Huff |

//
//
//
//
//
//
//
//
//
//
//
//

519

98cv2359 H (BLM)   SYNTRON'S REPLY ISO MOTION FOR STAY PENDING 28 U.S.C. §1292(C)(2) APPEAL
oc-275100

## I. INTRODUCTION

The Court's discretion in deciding this Motion is guided by the very same *Standard Havens* factors that the Court already determined favor a stay of the injunction. In light of new Federal Circuit case law, Syntron's case on the merits has only improved since that time, while its financial situation remains just as precarious. In fact, without a stay of damages proceedings to preserve the status quo, the Court's stay of the injunction would be virtually meaningless. Syntron cannot stay in business and pursue its appeal if it is forced to prematurely pay or bond a damages award. That is why Syntron immediately appealed under section 1292(c)(2), whose very purpose is to permit a stay of a damages trial pending an appeal on the merits.

## II. ARGUMENT

### A. Section 1292(c)(2) and the *Standard Havens* Factors Favor a Stay.

The Court has already found that the *Standard Havens* factors—a substantial case on the merits and the balance of harms—favor a 12-month stay of the injunction. (*See* Order Granting Permanent Injunction and Stay ("Injunction Stay Order"), p. 24). The very same factors apply to a stay of damages pending appeal. *See Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed. Cir. 1990) ("the four factors . . . always guide our discretion to issue a stay pending appeal."); *Phoenix Petroleum Co. v. United States FERC*, 1995 U.S. App. LEXIS 41094, *3 (Fed. Cir. July 26, 1995) ("[T]he *Standard Havens* factors are indeed applicable" to a stay pending appeal of orders other than injunctions). Those factors compel a stay of the damages proceedings for the same reasons as the injunction.[1]

There are two other important reasons to stay damages proceedings. First, as the Court held, "Syntron should have an opportunity to maintain the status quo" pending appeal. (Injunction Stay Order, p. 24.) The Federal Circuit has held that where an injunction is stayed because of a pending reexamination and appeal, "[t]o preserve the status quo . . . the damages

---

[1] Efficiency is not one of the factors, but even if it were, it would not favor proceeding with damages and the appeal in parallel. First, the damages proceedings are not inevitable. *See Magnesystems, Inc. v. Nikken, Inc.* 1994 WL 808421 *6-7 (C.D. Cal. Aug. 8, 1994). Second, the Federal Circuit is unlikely to delay the appeal of the merits in order to combine it with a later judgment on damages.

1

proceeding should also [be] stayed." *Standard Havens Prods. v. Gencor Indus.*, No. 93-1208, 1993 U.S. App. LEXIS 11963, at * 1-* 2 (Fed. Cir. May 21, 1993). Here, the status quo cannot be maintained absent a stay of damages proceedings because Syntron would not be able to pay or bond a damages award. It would instead be forced to declare bankruptcy or go out of business before its appeal is complete. (*See* Declaration of J. Lee ISO Motion for Stay of Damages ("Lee Damages Dec.") at ¶ 5.)[2]

Second, Syntron's interlocutory appeal arises under 28 U.S.C. § 1292(c)(2). Congress, the Supreme Court and the Federal Circuit have repeatedly stated that "[t]he purpose and rationale of §1292(c)(2) [is] to permit a district court to stay a damages trial pending the outcome of an appeal on the merits." *SRI Int'l, Inc. v. Advanced Tech. Lab.*, 1994 U.S. App. LEXIS 36220, * 3-4 (Fed. Cir. Dec. 21, 1994); *accord Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1580-81 (Fed. Cir. 1994); *Majorette Toys (U.S.), Inc. v. Darda, Inc. U.S.A.*, 798 F.2d 1390, 1391 (Fed. Cir. 1986); *McCullough v. Kammerer Corp.*, 331 U.S. 96, 98-99 (1947). To proceed with damages in this case—where the *Standard Havens* factors weigh in favor of a stay and Syntron sits on the brink of bankruptcy or extinction—would vitiate Syntron's right to its § 1292(c)(2) appeal and moot the very purpose of the statute.

One of the few decisions to address a motion to stay damages proceedings pending a § 1292(c)(2) appeal is *Magnesystems*, on which Abbott continues to rely. In *Magnesystems*, even though the court denied a stay of the injunction because the balance of harms favored the patentee, it still stayed damages because "[t]he policy underlying section 1292(c)(2) is the avoidance of needless damages accountings in patent cases. The Court disagrees with [the patentee] that such expense is inevitable. Furthermore, regardless of whether the expense is great or small, any needless expense is to be avoided." *Magnesystems, Inc.*, 1994 WL 808421 at *6-7 (internal citation omitted). In this case, unlike *Magnesystems*, the Court has found that the

---

[2] Syntron does not agree that Dr. Lee's earlier declaration only established irreparable harm from a denial of a stay of an injunction. However, his new declaration eliminates any doubt that Syntron will suffer irreparable harm from a denial of a stay of damages proceedings as well.

2
98cv2359 H (BLM) SYNTRON'S REPLY ISO MOTION FOR STAY PENDING 28 U.S.C. §1292(C)(2) APPEAL
oc-275100

balance of harms <u>favors</u> Syntron. Given the policy behind § 1292(c)(2), it would make little sense to deny a stay of damages where a stay of the injunction was found to be warranted.

### B. The Court Already Rejected Abbott's Arguments Against a Stay.

Abbott merely reargues the *Standard Havens* factors that the Court already weighed against Abbott.[3] Abbott repeats its erroneous argument that Syntron must first make a "strong showing" that it is likely to succeed on the merits before the other factors may be considered. (*See* Abbott's Oppo. p. 6.) The Court already rejected that argument. Likelihood of success is not a threshold factor, and the other factors are not optional. *See Standard Havens*, 897 F.2d at 512; *Polymer Techs. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996) ("We have required that a trial court engage in an evaluation and balancing of the four above-listed factors and the circumstances surrounding each. None may be ignored."). As this Court held, the test is a sliding scale: "When harm to the party requesting a stay is great enough, a court will not require a strong showing that it is likely to succeed on the merits." (Injunction Stay Order, p. 21 (quoting *Standard Havens*, 897 F.2d at 513) (brackets omitted). Rather, Syntron must show only a "substantial case" on the merits. *Standard Havens*, 897 F.2d at 513.

#### 1. The Court already decided that Syntron has shown a substantial case on the merits.

The Court held that Syntron has shown a "substantial question as to the continuing validity of Claims 22 and 23." (Injunction Stay Order, p. 22.) The Court further held that "there is a possibility that the Federal Circuit could disagree with this Court's claim construction on appeal." (*Id.*) This disproves Abbott's suggestion that the Court's characterization of Syntron's position as "logically persuasive" was a "typographical error." (*See* Abbott's Oppo., p. 9.)[4]

Syntron's likelihood of success on appeal has only increased since this Court found it to be "substantial." On March 18, the Federal Circuit clarified that the plain dictionary meanings of words in a claim trump the way the feature actually behaves, the plausibility of implementing the

---

[3] Abbott appears to have copied much of its brief *verbatim* from its unsuccessful opposition to the stay of the injunction.

[4] Abbott's reliance on the vacated December 10 JMOL Order is also inappropriate. The Court granted reconsideration of that Order because it was erroneous. The errors largely originated from Abbott's arguments. Its attempt to reintroduce them should be rejected.

1 feature, the context of the invention, the realities of production, and the way one of skill in the art would read and understand the specification. In *International Rectifier Corp. v. IXYS Corp.*, the Federal Circuit considered the meaning of "cellular polygonal region" in claims to a transistor device. Given the realities of manufacturing and the way diffusion actually forms the regions, the district court construed the limitation to require that the shape "be generally but not perfectly polygonal." *International Rectifier Corp. v. IXYS Corp.*, 2004 U.S. App. LEXIS 5164, *14 (Fed. Cir., March 18, 2004). The Federal Circuit acknowledged that "the polygonal base regions are formed by the diffusion of dopants into the silicon substrate, a process which necessarily blurs the outline of the regions. . . . [Thus] one of ordinary skill in the art would understand from the written description that the diffusion resulting from the doping process will naturally cause some blurring of the corners and sides of the polygonal regions." *Id.* at 17-19. Nevertheless, the Federal Circuit held:

> There is nothing, however, to suggest that the recognition of these diffusion effects by those skilled in the art warrants the re-definition of the term polygon to mean anything other than 'a closed plane figure bounded by straight lines.' . . . <u>The patentee . . .could have claimed the regions more broadly but chose to use the word 'polygonal' without modification or qualification. The district court was not free to attribute new meaning to the term or to excuse the patentee from the consequences of its own word choice.</u>

*International Rectifier*, 2004 U.S. App. LEXIS 5164 at *19 (emphasis added).

This Court based its finding of infringement on a definition of "reactant" that modified the dictionary definition—"a chemically reacting <u>substance</u>"—and focused instead on "the way a 'reactant' actually behaves, which reveals that there may be more than one 'reactant' provided." (Reconsideration Order, p. 14). This is the type of "attribution of new meaning" and "excusing the patentee from the consequences of its own word choice" that the Federal Circuit rejected in *International Rectifier*. The '484 patentee chose to claim a device in which the "chemically reacting substance"—not merely a portion of it—is non-diffusively immobilized. It makes no difference how a reactant "actually behaves," whether immobilizing the whole substance is difficult or expensive, or what the patentee meant to say. The Federal Circuit's latest case law supports Syntron's "absolute immobilization" position, because "a non-diffusively immobilized

4

1  [chemically reacting substance]" cannot include a substance that is "generally but not perfectly"
2  immobilized. *International Rectifier*, 2004 U.S. App. LEXIS 5164 at *14.[5]

3  As for validity, Dr. Gordon's arguments are irrelevant. The Federal Circuit and this Court
4  have held that the grant of reexamination alone establishes a "substantial case" for purposes of a
5  stay. *See Standard Havens*, 897 F.2d at 515 (the PTO's grant of reexamination "demonstrated
6  not only a 'fair' or 'better than negligible chance' of succeeding on the issue of [invalidity], but a
7  'substantial case.'"); (Injunction Stay Order, p. 22 ("the Court concludes that third party initiated
8  reexams . . . have a substantial likelihood of cancellation or change."). Additionally, Abbott
9  waived its right to have the Court consider the merits of Weiss, Takeda, and Deutsch in
10 combination, by taking the question away from the jury. It is now up to the PTO to decide
11 whether they anticipate the claims.

12 Even were it appropriate for the Court to consider the anticipation and obviousness issues,
13 Dr. Gordon's opinions are incorrect. Syntron's expert, Dr. Gary David, has rebutted each of Dr.
14 Gordon's contentions. (*See* Declaration of Gary S. David ISO Motion to Stay Damages ("David
15 Dec.").) In response to the arguments Abbott raised in its brief: (1) Weiss plainly discloses
16 detection of an analyte in a discrete reaction zone because the presence of analyte in the sample
17 either results in the release of the indicator dye from the reagent area, causing a color change in
18 the reagent area (Examples 1-6) or results in the dye remaining "fixed" to the cellulose particles
19 in the reagent area, in which case the absence of color change indicates the presence of analyte
20 (Examples 7-10). (*See id.* ¶15-16.); (2) Takeda discloses a "ligand-antiligand binding pair"
21 because the '484 claim language, specification, prosecution history, and this Court's construction

---

[5] Abbott's tiresome contention that Syntron will be asking the Federal Circuit for a new claim construction on appeal is incorrect. As Syntron has explained, the issue on appeal is what the Federal Circuit meant by its existing construction of "non-diffusively immobilized" ("the reactant does not dissolve and move"). Abbott is the one asking for a new construction ("immobilization sufficient to detect analyte"). Additionally, the Federal Circuit's denial of rehearing does not show that it "has already considered and rejected" Syntron's "harmless error" argument. (Abbott's Oppo., p. 10.) The Federal Circuit's Order proves that it never considered the "harmless error" argument, because it states (erroneously) that Syntron never raised it. *See Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1351 (Fed. Cir. 2003) ("Because . . . Syntron does not argue that the instruction was harmless error, we cannot affirm the judgment of noninfringement on the basis of the accused products' not incorporating a 'non-diffusively bound' and 'non-diffusively immobilized' reactant.").

of "ligand-antiligand binding pair" all prove that the term includes an enzyme-substrate pair, such as glucose and glucose oxidase. (*Id.* ¶¶22-29); and (3) Neither Abbott nor Dr. Gordon offer any opinion as to why Deutsch in view of the other two references would not render claims 22 and 23 obvious. (*Id.* ¶32). Because the PTO is considering Deutsch <u>in combination</u> with the other references, not alone, nothing that this Court or the Federal Circuit has previously said about Deutsch by itself addresses the issue.

### 2. The Court already decided that the equities favor a stay.

The only harm that Abbott claims would be caused by a stay is loss of its supposed right to exclude. But this Motion is for a stay of proceedings regarding <u>past damages</u>, which has no effect on Abbott's right to exclude. Abbott's right to exclude was relevant only to the stay of the injunction.[6] In any case, as the Court held in response to those arguments, Abbott's licensing activities and the sale of its business preclude a finding of irreparable harm even for a motion to stay an injunction. (*See* Injunction Stay Order, p. 23 ("Abbott's sale of the competing business and evidence of its willingness to license competitors favors the issuance of a stay.")); *see also Polymer Techs.*, 103 F.3d at 974 ("[E]vidence that . . . [the patentees] have engaged in a pattern of granting licenses under the patent such that it may be reasonable to expect that invasion of the patent right can be recompensed with a royalty rather than with an injunction. . . . negate[s] irreparable harm."); *E. I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987) (Granting stay because patentee "has licensed all willing competitors . . . [and] is in the process of divesting itself of its . . . business in the United States."); *T.J. Smith & Nephew, Ltd. v. Consolidated. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987) (Irreparable harm is rebutted by the patentee's "grant of licenses, acts incompatible with the emphasis on the right to exclude that is the basis for the presumption [of irreparable harm] in a proper case.").

Syntron, on the other hand, will be catastrophically harmed if a stay is denied. The cost of damages proceedings and discovery will take a significant toll on its already precarious financial

---

[6] For the same reasons, Abbott's accusation that Syntron is seeking a stay of damages "merely to delay . . . until the patent expires in 2008" makes no sense. (Abbott's Oppo., p. 1.) If Syntron is found to infringe on appeal, a stay will not exempt Syntron from damages that accrued during the stay, regardless of how much time remains on the patent.

situation. (*See* Lee Damages Dec. ¶ 4.) Moreover, it will not be able to pay or bond a damages award—it will instead be forced to declare bankruptcy or go out of business. (*Id.* ¶ 5.) That will make it all-but impossible for Syntron to pursue its appeal on the merits. While Abbott contends that Syntron is paying its lawyers "millions to defend this suit," Abbott apparently was paying no attention at the March 8 hearing, when Syntron's attorneys explained that Syntron has not been able to pay its attorneys' fees since before the trial. (*Id.* ¶ 3.) Abbott's continued reliance on *Windsurfing*, when both the Federal Circuit and this Court have held that it does not apply, is equally misplaced. (*See* Injunction Stay Order, pp. 10-11 (*Windsurfing* does not apply to a stay pending appeal).); *see also Standard Havens*, 897 F.2d at 515 (The patentee's "reliance on *Windsurfing* is misplaced. *Windsurfing* involved the improper denial of an injunction, not a stay pending appeal . . . . Certainly, *Windsurfing* does not overcome the equities of a case.").

Abbott's assertion that damages proceedings "will not unduly burden Syntron" is irrelevant and incorrect. (Abbott's Oppo., p. 2.) "Undue burden" is not one of the stay factors. In fact, it makes no difference how great or small the cost will be: "The policy underlying section 1292(c)(2) is the avoidance of needless damages accountings in patent cases. . . . [R]egardless of whether the expense is great or small, any needless expense is to be avoided." *Magnesystems, Inc,.* 1994 WL 808421 at *6-7. Abbott also ignores the burden that a bond would impose on Syntron. Yet later, when it suits Abbott, it argues that "a money judgment for past infringement . . . will also need to be secured by a bond pending appeal." (Abbott's Oppo. p. 13.)

In any case, contrary to Abbott's assertions, damages proceedings will be expensive and complex. While Abbott may wish to rely on "simple computer printouts" of updated sales figures, Syntron does not. Syntron is entitled to full discovery on a variety of issues, including whether Abbott has standing to pursue damages at all, given the sale of its business to Inverness. *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998) (A licensee may bring suit only when "all substantial rights under the patent have been transferred ... rendering the licensee the virtual assignee."); *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001). Moreover, royalty rates and license terms are complex, often involving different arrangements such as cross-licensing or manufacturing. Abbott's licenses

presumably grant worldwide rights to all claims of both the '162 and '484 patents, so experts will need to analyze the value of a license to *only* domestic use of the two remaining claims of the '484 patent. Syntron is entitled to discovery, including depositions, on all of these issues as well.

In addition, the Court has determined that there can be no liability for any foreign sales, or sales of products that use a buffer solution. These noninfringing sales must be subtracted from any damages calculation. *See, e.g., Standard Havens Prods. v. Gencor Indus.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991) ("[O]nly six of the ten [products] sold by [defendant] during the patent period were properly included in a patent damage award [because] three of the ten sales were of noninfringing [products] in the United States, and . . . one sale was made to a foreign customer located in England."); *Enpat, Inc. v. Microsoft Corp.*, 6 F. Supp. 2d 537, 539-40 (E.D. Va. 1998) ("[F]oreign sales may not be taken into account in any determination of a reasonable royalty."). Finally, because its existence is at stake, Syntron has no choice but to exercise its right to a jury trial on damages.

### 3. Rule 62(a) merely triggers the *Standard Havens* factors.

Federal Rule of Civil Procedure 62(a), relied on by Abbott, has no effect on the Court's discretion to issue a stay. Rule 62(a) merely states that "unless otherwise ordered by the court," a stay is not automatic in a patent case. Fed. R. Civ. P. 62(a). In other words, a court has discretion to stay damages. *In re Calmar*, cited by Abbott, confirms this. It also reaffirms that "the purpose of the legislation, § 1292(c)(2), allowing interlocutory appeals in patent cases was to permit a stay of a damages trial. Thus, there is no conflict between § 1292(c)(2) and Rule 62(a)'s grant of the discretion to stay or to proceed with the damages trial during the appeal." *In re Calmar, Inc.*, 854 F.2d 461, 464 (Fed. Cir. 1988). Even Abbott ultimately concedes that "under 1292(c)(2), stays . . . are within a district court's discretion." (Abbott's Oppo. p. 5.)[7]

---

[7] The only other 1292(c)(2) case cited by Abbott also contradicts its argument that Rule 62(a) affects the Court's discretion. In *Tate Access Floors*, the Federal Circuit reiterated that a district court has discretion to stay damages proceedings pending a 1292(c)(2) appeal. The Federal Circuit merely denied a petition for a writ of mandamus, because it "d[id] not find an abuse of discretion by the district court <u>in the circumstances of this case</u>." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 35 Fed. Appx. 884 (Fed. Cir. April 24, 2002) (emphasis added). The other case Abbott cites, *Epcon Gas*, has nothing to do with a 1292(c)(2) appeal, or with damages proceedings at all. In that case, the Court granted summary judgment of

(Footnote continues on next page.)

As the Court already held, "[i]n exercising its discretion, the court is guided by the [*Standard Havens*] flexible multi-factor test." (Injunction Stay Order, p. 20.) Thus, the grant of discretion in Rule 62(a) simply brings us back to the *Standard Havens* factors, which the Court has already determined favor a stay. In short, both the *Standard Havens* factors and the purpose of § 1292(c)(2), "to permit a stay of a damages trial," compel a stay of the damages proceedings.

### C. The Court May, and Should, Issue a Stay Without Bond

The Court is free to issue a stay without bond. *See Townsend v. Holman Consulting Corp.*, 881 F.2d 788, 796-97 (9th Cir. 1989) ("[T]he district court has broad discretionary power to waive the bond requirement if it sees fit."). Abbott's contention that Rule 62(d) requires a bond is incorrect: "Although [Rule] 62 provides that a supersedeas bond <u>may</u> be used to stay execution of a judgment pending appeal, the court has discretion to allow other forms of judgment guarantee." *International Telemeter, Corp. v. Hamlin Int'l Corp.*, 754 F.2d 1492, 1495 (9th Cir. 1985) (emphasis added); *see also Alexander v. Chesapeake, Potomac & Tidewater Books, Inc.*, 190 F.R.D. 190, 192 (E.D. Va. 1999) ("Rule 62(d) does not address, and hence does not preclude, issuance of a stay on the basis of some lesser bond, or indeed, no bond. It follows, logically, that this Rule leaves unimpaired a district court's inherent, discretionary power to stay judgments pending appeal on terms other than a full supersedeas bond. Indeed, every circuit that has addressed the issue has reached precisely this result."). In other words, Rule 62(d) says only that posting a full supersedeas bond automatically stays enforcement of a final judgment.

Rule 62(d) does not apply to interlocutory appeals under § 1292(c)(2) because there is no final judgment to enforce or bond. *NLRB v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988) ("When applied to [an interlocutory order such as] a subpoena compliance order, [Rule 62(a)] is largely meaningless. It would be difficult to calculate the size of a bond necessary to compensate the [plaintiff] for the delay in getting testimony and documents.") (quotation omitted). The very purpose of § 1292(c)(2) is to have the liability issues decided on appeal before proceeding on

---

(Footnote continued from previous page.)

noninfringement, so there were no damages proceedings to stay. The issue was whether the clerk's routine award of the defendant's motion for costs should be stayed. *See Epcon Gas Sys. v. Bauer Compressors, Inc.*, 2001 WL 363933, * 1 (E.D.Mich., Mar. 28, 2001).

damages. *See SRI Int'l,* 1994 U.S. App. LEXIS 36220 at * 3-4 (The purpose of 1292(c)(2) is "to permit a district court to stay a damages trial pending the outcome of an appeal on the merits."). Additionally, requiring a bond at this stage would result in the illogical procedure of conducting a damages trial in order to determine the amount of the bond necessary to stay the damages trial.

In any case, Syntron's financial condition precludes it from posting a full bond without declaring bankruptcy or going out of business. (Lee Damages Dec. ¶ 5.) Given Syntron's condition, the purpose of § 1292(c)(2), the closeness of the issues on appeal, and the Court's decision to stay the injunction, no bond should be required. *See Townsend,* 881 F.2d at 796 ("[T]he most common justification for allowing alternatives to a supersedeas bond is the financial hardship that the bond may impose on appellants."). If the Court does require security, the one thing Syntron can do is escrow a reasonable royalty on future sales. *See Standard Havens,* 897 F.2d 516 ("[Defendant] shall establish an escrow account to which it shall contribute [an amount] for each drying unit of the type adjudged at trial to infringe the patent-in-suit that is sold during the pendency of the appeal."). Abbott insists that the Court hold the damages proceedings in order to determine the royalty rate needed to stay the damages proceedings. Aside from being illogical, no damages trial is required because the 5.25% rate of the more valuable Campbell patent that Syntron has proposed exceeds any rate that Abbott would receive at a trial. If, however, the only obstacle to a stay is the royalty rate on future sales, Syntron would be open to a short, efficient procedure to establish a royalty rate for this limited purpose.

### III. CONCLUSION

Syntron respectfully requests that the Court preserve the status quo (and Syntron) by staying damages proceedings pending appeal, or at least for 12 months, in accordance with the purpose of section 1292(c)(2).

Dated: March 26, 2004                MORRISON & FOERSTER LLP

By: _____ for David Doyle
David C. Doyle
Attorneys for Defendant
SYNTRON BIORESEARCH, INC.

| | |
|---|---|
| 1 | DAVID C. DOYLE (CA SBN 70690) |
|   | STEVEN E. COMER (CA SBN 154384) |
| 2 | PENG CHEN (CA SBN 205718) |
|   | COREY A. SALSBERG ((CA SBN 216544) |
| 3 | **MORRISON & FOERSTER** LLP |
|   | 3811 Valley Centre Drive, Suite 500 |
| 4 | San Diego, California 92130-2332 |
|   | Telephone: (858) 720-5100 |
| 5 | Facsimile: (858) 720-5125 |
| 6 | Attorneys for Defendant |
|   | SYNTRON BIORESEARCH, INC. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABBOTT LABORATORIES, an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>SYNTRON BIORESEARCH, INC., a California corporation,<br><br>Defendant. | No. 98cv2359 H (JMA)<br><br>**PROOF OF SERVICE** |

I, Rose Sheehan, am employed in the City and County of San Diego, California. I am over the age of 18 years and not a party to the within action. My business address is 3811 Valley Centre Drive, Suite 500, San Diego, California, 92130.

On March 26, 2004, I caused to be served the following documents:

**SYNTRON BIORESEARCH, INC.'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL UNDER 28 U.S.C. § 1292(C)(2),**

**DECLARATION OF GARY S. DAVID, PH.D., IN SUPPORT OF SYNTRON BIORESEARCH INC.'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL UNDER 28 U.S.C. § 1292(C)(2),**

**DECLARATION OF JAMES P. LEE IN SUPPORT OF SYNTRON BIORESEARCH INC.'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL UNDER 28 U.S.C. § 1292(C)(2),**

//

//

---

1
PROOF OF SERVICE

sd-10596

**NOTICE OF LODGMENT IN SUPPORT OF SYNTRON BIORESEARCH INC.'S REPLY IN SUPPORT OF MOTION FOR STAY PENDING APPEAL UNDER 28 U.S.C. § 1292(C)(2), and**

**[PROPOSED] PERMANENT INJUNCTION**

by placing a true copy thereof in a sealed envelope(s), addressed as follows:

| | |
|---|---|
| Lee Carl Bromberg<br>Joel R. Leeman<br>Erik Paul Belt<br>BROMBERG & SUNSTEIN LLP<br>125 Summer Street, 11th Floor<br>Boston, MA 02110-1618 | **BY FAX AND OVERNIGHT DELIVERY**<br><br>Telephone: (617) 443-9292<br>Facsimile: (617) 443-0004 |

__X__ (VIA FACSIMILE) Pursuant to agreement of counsel and San Diego County Local 4.1(i), I transmitted the above documents by facsimile to the referenced facsimile number(s).

__X__ (BY OVERNIGHT DELIVERY) I placed each such sealed envelope, to be collected at Morrison & Foerster, San Diego, California, following ordinary business practices. I am familiar with the practice of Morrison & Foerster for collection and processing of packages by overnight delivery services, said practice being that in the ordinary course of business, overnight packages are picked up by a representative of that company to be sent that same day.

| | |
|---|---|
| Robert S. Gerber<br>Frank J. Johnson<br>SHEPPARD, MULLIN, RICHTER & HAMPTON<br>12544 High Bluff Drive, Suite 300<br>San Diego, CA  92130 | **BY FAX AND PERSONAL SERVICE**<br><br>Telephone: (858) 720-8900<br>Facsimile: (858) 509-3691 |

__X__ (BY PERSONAL SERVICE) I caused such envelope to be personally served through AMS, Inc., whose address is 3156 5th Ave. #140, San Diego, CA  92103. Proofs of personal service will be filed upon receipt.

I declare under penalty of perjury under the laws of the United States of America that this declaration was signed on March 26, 2004, at San Diego, California.

*Rose Sheehan* (signature)
Rose Sheehan

---

2
PROOF OF SERVICE
sd-10596